**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 6:11-cv-03367-MDH** |
| **NEW PRIME, INC. d/b/a PRIME, INC.,** | ) ) ) | |
| **Defendant** | ) ) | |
| **MS. DEANNA ROBERTS CLOUSE,** | ) ) | |
| **Intervenor.** | ) ) | |

## ORDER

Before the Court is the EEOC's Motion for Summary Judgment (Doc. No. 219);

Prime's Motion for Summary Judgment on all Claims for Punitive Damages (Doc. No. 226);

Prime's Motion for Summary Judgment Based on Title VII's Statute of Limitations (Doc. No.

224); Prime's Motion for Summary Judgment on the EEOC's Claim for a Record-Keeping

Violation (Doc. No. 228); and Prime's Motion for Summary Judgment as to All Claims by the

EEOC on behalf of Claimants Not Parties to This Action (Doc. No. 230). Plaintiff-Intervenor

Deanna Clouse has also filed a Motion for Partial Summary Judgment. (Doc. No. 222). The

Court has carefully considered the motions and related legal suggestions, and has also heard oral

argument from the parties.

As set forth herein, the EEOC's Motion for Summary Judgment (Doc. No. 219) is

granted in part, and denied in part. Prime's Motion for Summary Judgment on all Claims for

Punitive Damages (Doc. No. 226); Prime's Motion for Summary Judgment Based on Title VII's

Statute of Limitations (Doc. No. 224); Prime's Motion for Summary Judgment on the EEOC's Claim for a Record-Keeping Violation (Doc. No. 228); and Prime's Motion for Summary Judgment as to All Claims by the EEOC on behalf of Claimants Not Parties to This Action (Doc. No. 230) are denied. Finally, Plaintiff-Intervenor Deanna Clouse's Motion for Partial Summary Judgment is granted in part, and denied in part.

## BACKGROUND

Prime is an irregular route interstate trucking company that transports various commodities everywhere in the United States, Canada and Mexico. Prime has approximately 2,500 employees, over 4,000 trucks and about 6,700 drivers, both independent contractors and employees. Prime's president is Robert Low and its general counsel is Steve Crawford. Mr. Low is the founder, owner and president of Prime. John Hancock is the Director of Recruiting and Training and has worked at Prime since 1986. Rodney Rader is the Director of Technology and has been with Prime for 25 years. Low, Crawford, Hancock and Rader are all members of the Prime management team and meet weekly.

Prime initiated a Prime Student Driver (PSD) School to assist with its recruitment of drivers. Prime seeks applicants for truck drivers who may already have their Commercial Driver's License (CDL) or who may not yet have a license. If an applicant does not have a CDL license, they can, but are not required to, attend Prime's PSD School to obtain their CDL.[1] In the PSD program a student attends several days of on-site training to obtain a CDL permit. Once the permit is obtained, the student will drive over-the-road with a PSD program instructor for several weeks to meet the requirements to obtain a CDL license. After this instruction, and if the student

---

[1] Prime does not require an applicant to obtain their CDL through its program.

obtains a CDL, they then become eligible to be hired by Prime. Students in the PSD program are not guaranteed employment with Prime.

If a student is hired by Prime out of the PSD program, the employee is then required to drive with a Prime trainer for up to six (6) months.[2] An employee in training, "trainee," may be on the road with their trainer for up to six (6) or eight (8) weeks at a time. Trainees without enough driving experience must drive 50,000 – 60,000 miles with a trainer before they can drive alone. Existing Prime drivers volunteer to be instructors and trainers. A driver must have been with Prime for one year to qualify for this position. Prime has approximately 600-800 drivers who want to be trainers. In March 2012, Prime had fewer than 5 female trainers.

In 2004, Prime implemented a "same-sex trainer policy." It required all applicants who do not meet Prime's experience requirements to receive over-the-road training by an instructor and/or trainer who is the same gender as the applicant unless there is some pre-existing relationship between the female applicant and male instructor/trainer. As such, a female applicant would be assigned to a female instructor/trainer unless she had a pre-existing relationship with a male instructor or trainer. Prior to the adoption of this policy, women were put on trucks with the first available instructor/trainer regardless of their gender. The same-sex trainer policy was adopted after Prime was involved in a sexual harassment case brought by three female truck driver trainees.

The effect of this policy was that when a female applicant was ready to be assigned to a trainer or instructor a female driver had to be available. However, based on the number of female drivers available to train, Prime would place female applicants on a "female waiting list" when drivers were not available. Prime did not have a male waiting list. The wait period for

_____

[2] If a new employee has a CDL license but does not have the experience required, they will also be assigned a trainer and must meet the trainee requirements before they can drive alone.

assignment for a trainer appears to be disputed but the parties agree female applicants were placed on a waiting list while male applicants were not. Further, it is undisputed that the wait period could be longer than a year. Hancock, a member of the Prime management team, assigned the truck driver recruiter to keep the female waiting list.

Plaintiff Clouse, a female, applied for enrollment with Prime's driver training program. Prior to applying, Clouse had been a team driver with a male truck driver. She had worked in the trucking industry as a dispatcher and had obtained a Missouri Class B CDL in 1997 when she lived in St. Louis. She had also previously been authorized to operate commercial vehicles in and out of Canada and in Ohio. While Clouse had experience operating commercial vehicles throughout the United States, she did not have a Class A CDL, which was required by Prime to drive a truck. Clouse applied to Prime for the training program so she could obtain a Class A CDL. She was put on a waiting list as there were no female trainers available. In January 2009, Clouse was told Prime would call her when they had a female trainer available but "not to hold her breath." She informed Prime that she was willing to be trained by a man in order to enter the training program but was told that was not allowed.

On July 9, 2009, Clouse filed a charge of discrimination with the Missouri Commission on Human Rights alleging Prime had engaged in sex discrimination. Specifically, Clouse alleged that Prime told her that her application had been accepted but she could not be hired because she was female. The Charge stated the reason given by Prime was that because Clouse was a female she could only be trained by a female. However, no female trainers were available then or in the near future. On or about July 23, 2009, Prime was served with a Notice of Charge. On November 17, 2009, the MCHR issued a Finding of Probable Cause and transferred the case to the EEOC for further investigation. On April 1, 2010, the EEOC sent Prime a letter stating

"the EEOC's investigation of this charge is nation-wide in scope." Approximately one year later, on April 14, 2011 the EEOC sent its Letter of Determination to Prime. The EEOC set forth its alleged evidence and stated "Based on the foregoing, there is reasonable cause to believe that Respondent has subjected Charging Party and a class of female trainees to unlawful discrimination by adopting a policy that denies female trainees training and employment opportunities that are not denied to similarly-situated male trainees…" The letter further stated that "[r]espondent has committed record-keeping violations" and set forth the evidence the EEOC proposed supported this finding.

On the same day as the Letter of Determination, the EEOC sent its letter regarding conciliation. The letter stated "the conciliation period is the last opportunity to settle the charge confidentially with the Commission. If conciliation efforts fail and the Commission files suit based on the charge, the terms of any settlement must be filed in court. Moreover, the Commission will issue a press release when it files suit and again if there is a settlement." On May 3, 2011 Prime notified the EEOC that is was willing to commence the conciliation process. The EEOC then submitted its outline of expectations as to appropriate remedies for the alleged violations. In this letter the EEOC stated "the Commission has identified approximately 675 potential victims of Respondent's trainee assignment policy. (See attached list). If Respondent has information or documents showing that some females on the attached list did not have their opportunity to work delayed or denied because no female instructor or trainer was available, then Respondent should promptly provide that information. In addition, because hundreds of women have applied for driving positions since Respondent implemented the policy in 2003, more potential victims beyond those on the attached list may exist who will need to be identified as part of the conciliation." The EEOC further stated the following with respect to monetary relief:

Respondent agrees to make whole Charging Party, to include payment of back pay with interest and payment of pecuniary compensatory damages, non-pecuniary compensatory damages, attorney's fees and costs, instatement or front pay in lieu of instatement; make whole all identified and still-to-be identified victims, to include payment of back pay with interest and payment of pecuniary compensatory damages, non-pecuniary compensatory damages, attorney's fees and costs, instatement or front pay in lieu of instatement; Respondent agrees to assist the Commission in identifying and contacting the victims on the attached list and additional potential victims; agree to set up a fund, in the amount to be determined, to compensate victims.

Prime's counsel reviewed the list of 675 potential victims attached to the conciliation letter and identified men on the list, as well as individuals who had responded to the EEOC that they had applied to Prime and been assigned a trainer, had applied to Prime but taken another job instead, and one female that had applied to Prime, been assigned a trainer but then did not take the job because she became pregnant.

On June 7, 2011 Prime submitted its response to the conciliation proposal and stated that the claim filed with the EEOC was filed by only one individual, Deanna Roberts. It stated Prime would consider the option of reaching a reasonable financial settlement of her claim. Prime indicated it was not interested in soliciting discrimination claims from the 18 page list of individuals attached to the EEOC's letter. Prime informed the EEOC it had evaluated the proposed types of injunctive relief and was especially interested in obtaining some of the relief in order to try and avoid future charges of discrimination and investigation by the EEOC. Prime indicated it "is very interested in conciliating Ms. Robert's claims."

On June 14, 2011, the EEOC failed conciliation and notified Prime. In its letter, the EEOC stated "no further efforts to conciliate this case will be made by the EEOC." Subsequently, the EEOC filed the instant lawsuit.

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp., v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party is entitled to summary judgment as a matter of law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Once the moving party has established a properly supported motion for summary judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248.

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Id.* at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

## DISCUSSION

### 1. All Conditions Precedent Have Been Met.

The EEOC argues they are entitled to summary judgment on the issue that all conditions precedent to the filing of the lawsuit have been met.[3] Prime has filed its own motion regarding this issue – Prime's Motion for Summary Judgment as to All Claims by the EEOC on behalf of Claimants Not Parties to This Action (Doc. No. 230). Title VII authorizes the EEOC to bring

---

[3] The EEOC initially argued Prime failed to deny with particularity this allegation but subsequently dropped this argument as it admitted its oversight of the Amended Answer filed by Prime.

suit in its own name, or on behalf of a person or persons aggrieved by the employer's unlawful employment practice. *See* 42 U.S.C. § 2000(e)-5(f)(1); *and EEOC v. CRST Van Expedited, Inc.,* 679 F.3d 657, 672 (8th Cir. 2012). However, an integrated, multistep enforcement procedure must be followed in order for the EEOC to have authority to bring a civil action in federal court. *Id.* First, an employee files a charge with the EEOC setting forth the allegations that the employer has engaged in an unlawful employment practice. *Id.* Second, the EEOC is then required to investigate the charge and determine whether reasonable cause exists to believe that it is true. *Id.* Finally, if reasonable cause is found to exist, the EEOC must attempt to remedy the objectionable employment practice through the informal, nonjudicial means of conciliation. *Id., see also, Occidental Life Ins. Co. of Cal. v. EEOC,* 432 US 355, 359 (1977).

The EEOC is obligated to conciliate in good faith before filing suit. 42 U.S.C. § 2000(e)-5(b); *EEOC v. Asplundh Tree Expert Co.,* 340 F.3d 1256 (11th Cir. 2003). The EEOC's statutory duty to conciliate embodies "the congressional intent that enforcement be effected wherever possible without resorting to formal litigation." *Marshall v. Sun Oil Co.,* 592 F.2d 563, 565 (10th Cir. 1979). To satisfy the statutory requirement of good faith conciliation, the EEOC must "(1) outline to the employer the reasonable cause for its belief that the law has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer." *Asplundh,* 340 F.3d at 1259. Whether the EEOC has adequately fulfilled its obligation to conciliate is dependent upon the "reasonableness and responsiveness of the [EEOC's] conduct under all the circumstances." *Id.* The EEOC claims it has met these elements by (1) investigating the Roberts charge; (2) issuing a reasonable cause determination; and (3) attempting conciliation. For the reasons set forth below, this Court agrees.

**A.      Investigation and Reasonable Cause Determination.**

On July 9, 2009, Clouse filed a charge of discrimination with the Missouri Commission on Human Rights against Prime alleging sex discrimination.  Almost two years later, on April 14, 2011, the EEOC sent its Letter of Determination to Prime.  The EEOC conducted an extensive investigation of this charge for almost a two year period.  As such, the issue is not whether the EEOC conducted an investigation, rather, whether the EEOC was required to investigate the non-charging parties claims, or in this case, the list of potential victims.

The EEOC's investigation must reasonably grow out of the charge and the lawsuit must be like or reasonably related to the underlying EEOC charge.  *See EEOC v. Jillian's of Indianapolis, IN, Inc.,* 279 F.Supp.2d 974, 979 (S.D.Ind. 2003).  The EEOC may seek relief on behalf of individuals beyond the charging parties and for alleged wrongdoing beyond those originally charged; however, the EEOC must discover such individuals and wrongdoing during the course of its investigation.  *Id.* at 980; *see also EEOC v. Harvey L. Walner & Assoc.,* 91 F.3d 963, 968 (7th Cir. 1996).  The EEOC may allege in a complaint whatever unlawful conduct it has uncovered during the course of its investigation, provided that there is a reasonable nexus between the initial charge and the subsequent allegations in the complaint.  *Id.*  The initial charge, the investigation and conciliation efforts must relate with the allegations in the complaint to provide the defendant-employer adequate notice of the charges against it and a genuine opportunity to resolve all charges through conciliation.  *EEOC v. Outback Steak House of Fla, Inc.,* 520 F.Supp.2d 1250, 1263 (D.Colo.2007).

Prime argues the EEOC  failed to discover the allegedly aggrieved individuals during the course of its investigation.  It further argues that the EEOC cannot make claims on behalf of individuals not made part of the conciliation process.  Prime bases its argument on *EEOC v.*

*CRST Van Expedited, Inc.,* 679 F.3d 657 (8th Cir. 2012). *CRST* involved a plaintiff who alleged she was sexually harassed by her lead trainers. The EEOC attempted to find other individuals who may have claims regarding sexual harassment by the same or other CRST employees. In addition, the EEOC attempted to find other potential claimants after its initial lawsuit was filed. The Court held in that instance the EEOC could not "go on a fishing expedition" for other potential claimants after it filed its lawsuit.

To the contrary, here, the initial Charge of Discrimination indicated that the complaint concerned females not being hired based on their gender. It more specifically stated, "The reasoning provided to Complainant by Respondent was that because she was a female she cannot be trained by any available trainer but only by a female trainer and no trainers of this gender are available now or in the near future." Prime was made aware that its policy regarding same sex training was at issue upon receipt of the Charge of Discrimination. Further, the EEOC's initial letters put Prime on notice that they were investigating on behalf of "similarly situated individuals" with regard to the same-sex training policy. Unlike *CRST* the initial charge did not involve a single claim of sexual harassment, but rather involved a company wide policy that applied to all females. Prime was put on notice through the initial charge and the subsequent investigation that any females that were subject to the policy, or more specifically put on the waiting list, were part of the EEOC's investigation. Prime was also put on notice by the EEOC, prior to the filing of the lawsuit, that the investigation of its same-sex policy was "nation-wide." While the EEOC may not have specifically identified each female, Prime had adequate notice of the potential class members.

Even more telling is the fact that Prime was in control of the information regarding females affected by the same sex policy. Prime was at all times in control of the information, and had documentation tracking potential claimants in its "female waiting list."

The EEOC's scope of the investigation in this matter was clear – it pertained to the same-sex training policy implemented by Prime, including the female waiting list for potential applicants, trainees and potential employees. Prime's reliance on the facts in *CRST* is unpersuasive. Here, the EEOC's investigation of the same-sex policy is substantially different than an individual claim of sexual harassment by a driver against her supervisor. Further, it is undisputed the policy was applied to females on a nation-wide scope within Prime's company.

## B. Conciliation.

The EEOC is obligated to conciliate in good faith before filing suit. 42 U.S.C. § 2000(e)-5(b); *EEOC v. Asplundh Tree Expert Co.,* 340 F.3d 1256 (11th Cir. 2003). The EEOC's statutory duty to conciliate embodies "the congressional intent that enforcement be effected wherever possible without resorting to formal litigation." *Marshall v. Sun Oil Co.,* 592 F.2d 563, 565 (10th Cir. 1979). To satisfy the statutory requirement of good faith conciliation, the EEOC must: "(1) outline to the employer the reasonable cause for its belief that the law has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer." *EEOC v. Asplundh Tree Expert Co.,* 340 F.3d at 1259. Whether the EEOC has adequately fulfilled its obligation to conciliate is dependent upon the "reasonableness and responsiveness of the [EEOC's] conduct under all the circumstances." *Id.*

The EEOC asserts that it met this requirement by submitting its written proposal. Prime argues that not only did the EEOC fail to investigate any of the additional individuals in the list of potential claimants, but also that this failure to investigate undermined any opportunity to

conciliate. Prime's position is that the EEOC failed to conciliate based on the fact that the number of claimants was unknown.

The EEOC's conciliation letter sets forth that "based on lists and other information provided by Respondent, to date the Commission has identified approximately 675 potential victims of Respondent's trainee assignment policy. (See attached list)." It further states, "In addition, because hundreds of women have applied for driving positions since Respondent implemented the policy in 2003, *more potential victims beyond those on the attached list* may exist who will need to be identified as part of the conciliation." (*emphasis added*). On June 7, 2011 counsel for Prime responded to the EEOC's conciliation letter stating, "Although Prime might consider the option of reaching a reasonable financial settlement of her [Deanna Roberts] claim presented in her Charge of Discrimination, it is not interested in soliciting discrimination claims from the 18 page listing of persons denominated "Potential Victims" in the attachment to your letter of May 12, 2011." Prime further states regarding the other relief sought "to that extent, it would like to work with the EEOC in trying to formulate a policy which would gain the approval of involved persons at the EEOC." Prime further states it "is very interested in conciliating Ms. Robert's claim." Prime expressed no interest in considering compensation for any women affected by the policy other than Ms. Roberts.

On June 14, 2011, one week later, the EEOC responded that "New Prime, Inc. is not willing to provide monetary relief for any potential victim listed on the attachment to Investigator Harold Emde's letter of May 12, 2011. Accordingly, no further efforts to conciliate this case will be made by the EEOC."

In this case, while the length of names included on the list attached to the EEOC's conciliation letter is concerning, so too is the fact that Prime did not maintain or produce the

"female waiting list." Prime argues the EEOC failed to identify the specific claimants who were discriminated against by its same-sex policy and instead submitted a lengthy list of names in an effort to go on a "fishing expedition." It should be noted that Prime's criticism of the list of 675 names was a list the EEOC was able to whittle down from the over 30,000 names it was given by Prime. It is clear Prime was the only entity in control of the document which would have given the parties the specific information needed – the names of any individuals subjected to the policy. The waiting list maintained by Prime was specifically all the female applicants who were unable to move forward because of the same-sex training policy.

In fact, Prime's failure to preserve the lists and cooperate in identifying women impacted by the policy was largely responsible for the difficulty the EEOC had in finalizing the list. Prime was put on notice at a very early stage in the EEOC's investigation that it was investigating the same-sex-trainer policy on a nation-wide scope. Further, once put on notice, Prime was in control of the information of what individuals may or may not have been subject to its same-sex policy and how best to evaluate who the potential claimants may be.

Unlike *CRST,* where the EEOC was attempting to track down other females who may or may not have been sexually harassed, here the EEOC was investigating a policy that applied to a very defined class of individuals – female applicants who were in need of training to qualify for employment with Prime. Here, Prime not only knew that the list of potential victims would be those individuals subject to the same-sex training policy, it had created and maintained a female waiting list identifying the very individuals who were subjected to its policy.

While this Court is underwhelmed by the EEOC's attempt at conciliation, it finds that it did meet the low hurdle of attempting a reasonable and responsive conciliation process. While it is clear that the EEOC did not make efforts to further any negotiations with Prime, despite their

response regarding some of the issues presented, the Court is not persuaded that this is enough to prevent the case from meeting the requirements for the filing of the instant lawsuit.[4] Whether the EEOC has adequately fulfilled its obligation to conciliate is dependent upon the reasonableness and responsiveness of its conduct under all the circumstances. The Court finds in this case that burden has been met. The EEOC's Motion for Summary Judgment is **GRANTED** as to all conditions precedent to filing this lawsuit and Prime's Motion for Summary Judgment as to all Claims by the EEOC on Behalf of Claimants Not Parties to this Action (Doc. No. 230) is **DENIED.**

###  2. Pattern or Practice of Sex Discrimination.

To establish a prima facie case of pattern or practice discrimination, Plaintiff must show that the discrimination was the company's standard operating procedure. *International Brotherhood of Teamsters v. U.S.,* 431 U.S. 324, 360 (1977). In *International Union, UAW v. Johnson Controls, Inc.,* 499 U.S. 187 (1991), the defendant operated a battery manufacturing plant and the company implemented a policy to "protect" women employees from exposure to lead. The company stated that it was protecting women "capable of bearing children" from lead exposure and therefore the policy was not discriminatory. The Court held that "the bias in Johnson Controls is obvious. Fertile men, but not fertile women are given a choice as to whether they wish to risk their reproductive health for a particular job… [The employer's] fetal-protection policy explicitly discriminates against women on the basis of their sex." *Id.* at 197.

---

[4] The Court notes that the EEOC's analysis of this Court's previous Order on the motion for Protective Order (Doc. No. 200) is misguided. The EEOC argues that based upon the Court's previous Order, Prime may not challenge the sufficiency of the EEOC's investigation. While the Court did state that further discovery on the EEOC's investigation was unnecessary, it further stated "… defendant may be able to raise certain challenges to the EEOC's conciliation process, as discussed in *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir. 2012)" at a later time. (Doc. No. 200).

In this case, Prime adopted a same-sex driver policy. The policy stated that women who applied to be students or entry level trainees would only be assigned to a female instructor or trainer, unless she had a pre-existing relationship with a male instructor or trainer.[5] Prime contends it put the policy in place in order to protect female applicants. However, the policy is facially discriminatory, much like the policy in *Johnson Control,* in that it places limitations on the opportunities for female applicants to be trained versus men. Prior to this policy being implemented women were put on trucks with male or female drivers on a first come, first served basis. The same-sex policy created a waiting list for females while none existed for males. Therefore, there is no question the policy created an impermissible impediment to training and employment for female drivers that the male drives did not face. This was no small impediment but one which could require women to remain on the waiting list for a year or more while men faced no such delay. The Court finds Prime's same sex policy was the company's standard operating procedure and is facially discriminatory resulting in disparate treatment of female applicants and drivers.

Once the Court finds the policy is facially discriminatory it looks to whether the employer can provide an affirmative defense to permit the policy. Prime asserts the affirmative defense that sex is a bona fide occupational qualification ("BFOQ"). Section 2000e-2(e)(1) of Title 42 of the United States Code states a bona fide occupational qualification is a qualification that is reasonably necessary to the normal operation of that particular business or enterprise. The employer bears the burden of establishing the affirmative defense that a particular qualification is a BFOQ. *See Meacham v. Knolls Atomic Power Lab.,* 554 U.S. 84 (2008). Further, the BFOQ defense is extremely narrow and does not extend to the protection of employees. *International*

---

[5] Prime suspended this policy in 2013.

*Union, et al, v. Johnson Controls,* 499 U.S. at 200-203. Prime argues its same-sex training policy was based on its safety and privacy concerns for women and therefore is a BFOQ. This Court does not agree.

In *Johnson Controls* the Court stated "the professed moral and ethical concerns about the welfare of the next generation do not suffice to establish a BFOQ of female sterility. Decisions about the welfare of future children must be left to the parents who conceive, bear, support, and raise them rather than to the employers who hire those parents." *International Union, et al, v. Johnson Controls,* 499 U.S. at 207. It further stated "our cases have stressed that discrimination on the basis of sex because of safety concerns is allowed only in narrow circumstances." *Id.* It is clear that the BFOQ safety exception is limited to instances in which sex actually interferes with the employee's ability to perform the job. *Id.* Gender must relate to an employee's ability to perform the duties of the job in order for the BFOQ to apply.

This Court has no difficulty concluding that Prime cannot establish a BFOQ based on safety concerns. Prime admits that "a woman's gender does not interfere with her ability to perform the job of truck driver or to be trained as a truck driver for Prime." Prime's argument that the same-sex trainer policy is necessary to protect the safety and privacy of women is without merit. Similar to *Johnson Controls*, the women who apply for positions at Prime should be allowed to make their own decisions regarding their potential employment within the trucking industry. Prime argues it implemented the policy "to better provide for the privacy of its drivers" and for the "safety of female drivers, and to protect them from unacceptable behavior, including harassment, assault and rape."[6]

---

[6] Prime states prior to implementing the same-sex trainer policy it already had a zero tolerance policy, a complaint procedure available to students and drivers, a panic button on its satellite communications equipment and an 800 hotline number to call for help.

As the Court stated in *Johnson,* for a BFOQ to be available there must be more at stake than an individual woman's decision to weigh and accept the risks of employment. *Id.* at 206. While the Court in *Johnson* was interpreting the issue of safety under a BFOQ defense, the logic equally applies to the issue of privacy. Here, Prime not only created an obstacle for female applicants, it also removed a female applicant's ability to make her own decision with regard to any alleged safety or privacy concerns she may or may not encounter with the potential job. Further, Prime offers no precedent for a BFOQ defense to apply to an employee's own privacy concerns. The cases cited to the Court discuss third party privacy issues. *See Hernandez v. Univ. of St. Thomas,* 793 F.Supp. 214 (D. Minn. 1992)(discussing privacy issues of female residents in dormitories); *Rabino v. Iranon,* 145 F.3d 1109 (9th Cir. 1998)(discussing privacy interest of female inmates); and *Norwood v. Dale Maintenance System, Inc.,* 590 F.Supp. 1410 (N.D. Ill. 1984)(discussing privacy issues of individuals using washrooms).

In addition, Prime's argument that the females affected by its same-sex trainer policy were third parties because they were not yet Prime "employees" is disingenuous. The same-sex trainer policy resulted in sex discrimination prohibited by Title VII when it prevented women from obtaining enrollment in their PSD and jobs based on their gender. For all these reasons, the Court finds there is no genuine issue of material fact with regard to the discriminatory nature of the same-sex trainer policy and the Court **GRANTS** Plaintiff's Motion for Summary Judgment on this issue.

### 3. Punitive Damages.

The EEOC argues that summary judgment should be granted in its favor on the issue of punitive damages. Title 42 U.S.C. § 1981a(b) provides in pertinent part: "A complaining party may recover punitive damages under this section against a respondent … if the complaining

party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Prime has also filed a Motion for Summary Judgment on the issue of Punitive Damages. (Doc. No. 226). Prime argues summary judgment should be entered in favor of Prime and against Plaintiffs on all claims for punitive damages.

Malice and reckless indifference can be shown by demonstrating that an employer discriminated "in the face of a perceived risk that its actions will violate federal law." *Dominic v. DeVilbiss Air Power Co.,* 493 F.3d 968, 974 (8th Cir. 2007). The employer's state of mind regarding its knowledge that it "may be acting in violation of federal law, not its awareness that it is engaging in discrimination," is relevant to a claim for punitive damages. *Id.* Thus, in order to be liable for punitive damages, an "employer must at least discriminate in the face of a perceived risk that its actions will violate federal law." *EEOC v. Siouxland Oral Maxillofacial Surgery Assoc., L.L.P.,* 578 F.3d 921, 925 (8th Cir. 2009)(remanding solely on issue of punitive damages and ordering district court to allow jury to determine issue).

It is undisputed Prime's general counsel, Mr. Crawford, is familiar with Title VII and has handled multiple issues for Prime regarding employment laws. Crawford testified he was responsible for encouraging and creating the same-sex training policy but also testified he did not "do much legal research" on it. Crawford was also aware another trucking company had, at a minimum, been investigated by the EEOC for implementing a similar same-sex training policy. Crawford testified:

> Q. No. Would you violate a civil law to protect women?
>
> A. I did, yes. We did exactly what we thought was the right thing. Our interpretation of this policy were in the best interest of these women. They were also consistent and congruent with the 2003 or 2004 case and what we learned during that case.

Here, Plaintiff has clearly provided sufficient evidence to justify a potential award of punitive damages. However, that does not mean an award of punitive damages should be entered as a matter of law. As set forth in *EEOC v. Siouxland Oral Maxillofacial Surgery Assoc., L.L.P.,* 578 F.3d 921 (8th Cir. 2009), the issue of punitive damages should be submitted to a jury when such a question exists. Prime claims the policy was motivated out of concern for the safety of female drivers. It asserts, in spite of the testimony of its general counsel at deposition, that it was not aware the policy violated federal law. While the position is not particularly credible given the deposition testimony of legal counsel, the Court will allow Prime to further explain its position at trial. As such, because a genuine issue of material fact exists with regard to punitive damages the EEOC's Motion for Summary Judgment on Punitive Damages is **DENIED** and Prime's Motion for Summary Judgment on Punitive Damages (Doc. No. 226) is also **DENIED.**

### 4.    Backpay and instatement.

Plaintiff argues that Clouse and forty-five other women applied for truck driver jobs with Prime during the period of February 2008 through December 2011. The EEOC argues that these women were all "approved" by Prime but were either put on a waiting list, told they had to wait because no trainers were available, or were never contacted after they were approved. Plaintiff claims these individuals "are entitled to backpay in amounts to be determined at trial." The EEOC moves the Court to rule each Claimant was discriminated against by Prime and then to allow a jury to decide the amount of any backpay. Prime argues that this request is premature because the EEOC has not proven liability for each claimant and it has not proven any economic injury. This Court agrees the EEOC's request for summary judgment regarding the issuance of backpay is premature. However, backpay and instatement may indeed be among the relief to

which some plaintiffs may be entitled. At this time, a genuine issue of material fact exists with regard to each individual claimant's entitlement, if any, to backpay or any other potential damages. As such, the EEOC's Motion for Summary Judgment requesting the Court to rule that each claimant is entitled to backpay and instatement is **DENIED**.

   5.    **Statute of Limitations.**

Prime's Motion for Partial Summary Judgment based on Title VII's statute of limitations moves the Court to grant summary judgment on the claims of seven (7) of the non-intervenor claimants. (Doc. No. 224). Prime argues these claims are untimely and therefore time-barred.

Plaintiffs' First Amended Complaint clearly sets forth that its claims are brought pursuant to § 706 and § 707. The EEOC's pattern or practice claim of discrimination is based on Prime's same-sex trainer policy that deprived females of equal employment opportunities because of their sex. The EEOC argues there is no applicable limitation period for § 707 pattern or practice cases. *Citing EEOC v. Mitsubishi Motor Mfg of America, Inc.,* 990 F.Supp. 1059 (C.D. Ill. 1998).

Prime argues any "class members" who were allegedly subjected to the unlawful employment practice are limited to a 300 day period for the filing of the charge. *Citing EEOC v. CRST Van Expedited, Inc.,* 615 F.Supp.2d at 877-879. Prime also argues when the EEOC expands its investigation to include a pattern-or-practice claim the filing date of the charge is deemed to be the date on which the EEOC notified the Defendant that it was expanding its investigation to encompass pattern or practice. *EEOC v. Optical Cable Corp.,* 169 F.Supp.2d 539, 547 (W.D. Va. 2001). Prime therefore believes the notice began on April 1, 2010 when it received a letter saying the EEOC's investigation was nation-wide in scope. Prime asserts any

claims of unlawful employment practices that fall before June 4, 2009 (300 days prior to April 1, 2010) are time-barred.[7]

The Eighth Circuit has not ruled on whether a statute of limitations applies to a pattern or practice claim brought under § 707. Further, district courts are in disagreement regarding the application of a statute of limitations to these claims. A few courts have applied the limitations period of § 2000e-5(e) to pattern and practice claims brought by the EEOC. *See e.g., EEOC v. Optical Cable Corp,* 169 F.Supp.2d 539 (W.D. Virginia, 2001); *EEOC v. Bass Pro Outdoor World,* 884 F.Supp.2d 499 (S.D. Texas 2012); and *EEOC v. Sears, Roebuck & Co.,* 490 F.Supp. 1245 (M.S. Ala. 1980). However, other courts have not applied the limitations period. *See e.g., EEOC v. Sterling Jewelers,* 2010 WL 86376 (W.D.N.Y. Jan. 6, 2010); *EEOC v. Mitsubishi Motor Mfg of America, Inc.,* 990 F.Supp. 1059 (C.D. Ill. 1998); *EEOC v. Dial Corp.,* 156 F.Supp.2d 926 (N.D. Ill 2001)("the application of a limitations period in a § 707 action does not make intuitive or legal sense"); *Scolari Warehouse Mkts., Inc.,* 488 F.Supp.2d 1117 (D. Nev. 2007) and *EEOC v. LA Weight Loss,* 509 F.Supp. 2d 527 (D. Maryland 2007)(imposing limitations period on the EEOCs charge would be inconsistent with the very nature of a pattern or practice violation).

Prime relies on the Iowa District Court's opinion in *EEOC v. CRST Van Expedited,* 615 F.Supp. 2d 867 (N.D. Iowa 2009) to suggest a court within the Eighth Circuit has ruled the statute of limitations applies to pattern or practice claims. However, in *CRST* the Court held that "the EEOC had presented the court with insufficient admissible evidence for a reasonable jury to find that CRST has engaged in a pattern or practice of tolerating sexual harassment." *Id.* at 876. Further, it held the EEOC's entire argument was premised upon immunity from the statute of

---

[7] The seven claimants Prime asserts are time barred applied for positions at Prime in 2008 and early 2009.

limitations because it had a viable pattern or practice case but the Court disagreed. *Id.* The Court held there was no such pattern or practice case. *Id.* Further, a review of the *CRST* case shows it was a § 706 claim, and did not include a § 707 allegation. *See EEOC v. CRST Van Expedited,* 2009 WL 2524402 (N.D. Iowa August 13, 2009). As previously discussed, Prime's reliance on *CRST* is dissimilar to the facts in this case. The plaintiff in *CRST* had a claim of sexual harassment against her supervisor and the EEOC attempted to bring in other women who claimed to be sexually harassed. Here, the Court holds Prime implemented a discriminatory policy that applied to all females. The EEOC therefore has established its claim for pattern or practice violations. Further, the investigation of the original charge was based on a class of individuals who were affected by Prime's same sex trainer policy.

After reviewing numerous cases discussing this issue, this Court agrees with the reasoning of a district court in Illinois that stated "the very nature of a pattern or practice case attacking systemic discrimination by a company seems to preclude the application of a limitations period." *EEOC v. Mitsubishi Motor Manuf. Of America, Inc.,* 990 F.Supp. 1059 (C.D. Ill. 1998). As such, this Court agrees that no limitation period applies to the EEOC's § 707 claim and as such, Prime's Motion for Partial Summary Judgment based on Title VII's Statute of Limitations (Doc. No. 224) is **DENIED**.

### 6.     Records.

The EEOC's Motion also seeks summary judgment on Prime's alleged violations of record keeping regulations. Prime has also filed a Motion for Summary Judgment on the EEOC's Claim for a Record Keeping Violation. (Doc. No. 228). The EEOC argues that Prime failed to maintain records pursuant to 29 CFR § 1602.14 which states:

> Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms

submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. …Where a charge of discrimination has been filed … the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected. The date of final disposition of the charge or the action means the date of expiration of the statutory period within which the aggrieved person may bring an action in a U.S. District Court or, where an action is brought against an employer either by the aggrieved person, the Commission, or by the Attorney General, the date on which such litigation is terminated.

It is undisputed that Prime created and maintained a female waiting list regarding the same-sex training policy. The spreadsheet, or waiting list, was used to keep track of females awaiting training. If a female could not be contacted, indicated that she was no longer interested, or started in the PSD school, her name would be deleted. The "working" spreadsheet was overwritten with additions or deletions. Prior to March 2011, Prime failed to retain prior versions of the list when changes were made.

The EEOC claims Prime was put on notice to preserve all versions of the waiting list on multiple occasions. The Notice of Charge served on Prime on July 23, 2009 specifically referred to 29 C.F.R. § 1602.14. Further, the EEOC investigator sent at least four written requests for information regarding documents pertaining to the same-sex policy and women affected by the same. Specifically, on February 10, 2010, the EEOC sent a letter requesting the names and other information for all females who applied from January 1, 2006 to be a truck driver trainee but were not hired or assigned to a trainer because a trainer of the same gender was unavailable. On March, 18, 2010 after not receiving a response, the EEOC mailed an administrative subpoena to Prime requesting the same information. On April 1, 2010, Prime received a letter notifying it the

EEOC's investigation was nationwide in scope and covered the time period January 1, 2006 through the date of the letter. On May 21, 2010, Prime was sent another letter regarding requests for information from the EEOC pertaining to the female applicants who were not assigned a trainer or instructor. On August 12, 2010, the EEOC requested all copies of waiting lists. On August 31, 2010, Prime sent a letter stating:

> "unfortunately the data fields were unable to provide any information as to any drivers who may have been on a waiting list for a same sex trainer, since no such information was recorded in the status fields searched, nor in any electronic fields. There are no documents existing which would provide any information as to individuals who could not be assigned to a trainer because a same sex trainer was not available… Prime simply has no "document" within the definition you provide or as commonly defined, containing any list of driver applications waiting to be assigned to a same sex driver."

On December 20, 2010, the EEOC requested on-site interviews of Prime personnel. On January 6, 2011, during an on-site interview, the EEOC investigator was given a female waiting list and told the waiting list was kept as an excel spreadsheet. Previous versions of the waiting list were not retained. On January 19, 2011, the investigator specifically requested "all versions of any and all waiting lists" a final time. The waiting lists were not preserved prior to March 2011.

Prime argues it was not required to retain the waiting list because it was "nothing more than a working tool to make sure that we're just keeping track of who can make sure that they're ready to go." Prime further argues that no individual applicant information has been lost or deleted. Prime contends that the failure to maintain the waiting list does not preclude the EEOC from identifying the female applicants who had to wait for a trainer. These arguments are disingenuous. As previously discussed, Prime was the only entity in control of the information regarding potential victims and the EEOC attempted to obtain that information from an enormous list of names it was provided.

While the Court finds these facts may be sufficient to state a claim of record keeping violation, the EEOC's Motion for Summary Judgment seeks an order granting specific injunctive relief prohibiting Prime from arguing the EEOC's claims should be limited to those specifically identified by the EEOC during its investigation. Prime filed a Motion seeking this relief – its Motion for Summary Judgment as to all Claims by the EEOC on Behalf of Claimants not Parties to this Action (Doc. No. 230) - which the Court has denied. Therefore, the Court is not inclined to issue any further "specific injunctive relief" at this time. Wherefore, the Court **DENIES** the EEOC's Motion for Summary Judgment on this issue and also **DENIES** Prime's Motion for Summary Judgment on the EEOC's Claim for a Record-Keeping Violation. (Doc. No. 228).

## 7. Spoliation.

Spoliation occurs when a party intentionally destroys evidence. A district court is required to make two findings before an adverse inference instruction is warranted: (1) "there must be a finding of intentional destruction indicating a desire to suppress the truth," and (2) "[t]here must be a finding of prejudice to the opposing party." *Stevenson v. Union Pacific Railroad Co.,* 354 F.3d 739, 746, 748 (8th Cir.2004); *see also, Hallmark Cards, Inc. v. Murley,* 703 F.3d 456 (8th Cir. 2013).

The Court is required to consider whether the destruction of a record was made in circumstances where the party "knew or should have known that the documents would become material." *Id.* There must be some indication of an intent to destroy the evidence for the purpose of obstructing or suppressing the truth in order for the sanction to be considered. *Id.*

After careful review of Plaintiff's Motion, the Court finds that it does not have enough evidence at this time to issue a ruling on Plaintiff's claim for spoliation. If needed, upon request the Court will hold an evidentiary hearing on Plaintiff's claim for spoliation at a later date. After

the Court has heard evidence from the parties on Plaintiff's claim for spoliation it could issue a ruling as to whether Plaintiff has enough evidence to support sanctions that would warrant an adverse inference instruction at the trial in this matter.  However, at this time, a genuine issue of material fact exists with regard to whether Prime committed spoliation to justify sanctions and therefore, the EEOC's Motion for Summary Judgment on Spoliation is **DENIED**.

        **8.**      **Plaintiff-Intervenor's Motion for Partial Summary Judgment.**

Plaintiff –Intervenor Ms. Clouse has filed a Motion for Partial Summary Judgment moving the Court to find that Prime violated Title VII by failing to hire her and finding that Prime is liable to her for damages and equitable relief as requested in her Complaint.  As fully discussed herein, the Court has held that Prime's same-sex trainer policy violated Title VII and that Prime's argument regarding a BFOQ defense is denied.  Prime's opposition to Clouse's Motion for Partial Summary Judgment (Doc. No. 244) raises the same argument regarding Prime's position that it is entitled to a BFOQ exception to liability.  Prime does not raise any additional arguments regarding Clouse's specific claims as they relate to her individually. Therefore, for the reasons already discussed, the Court finds that Clouse is entitled to partial summary judgment regarding Prime's violation of Title VII and the discriminatory nature of its same-sex policy.  However, a genuine issue of material fact exists with regard to the damages and equitable relief Clouse may be entitled.  Therefore, the Court **GRANTS** in part, and **DENIES** in part, Clouse's Motion for Partial Summary Judgment.  (Doc. No. 222).

<u>CONCLUSION</u>

Wherefore the Court ORDERS that the EEOC's Motion for Summary Judgment (Doc. No. 219) is **GRANTED** in part, and **DENIED** in part.  Prime's Motion for Summary Judgment on all Claims for Punitive Damages (Doc. No. 226) is **DENIED**; Prime's Motion for Summary

Judgment Based on Title VII's Statute of Limitations (Doc. No. 224) is **DENIED**; Prime's

Motion for Summary Judgment on the EEOC's Claim for a Record-Keeping Violation (Doc. No.

228) is **DENIED**; Prime's Motion for Summary Judgment as to All Claims by the EEOC on

behalf of Claimants Not Parties to This Action (Doc. No. 230) is **DENIED** and Plaintiff-

Intervenor Deanna Clouse's Motion for Partial Summary Judgment (Doc. No. 222) is

**GRANTED** in part, and **DENIED** in part.

      **IT IS SO ORDERED.**

DATED:      August 14, 2014

                            ___*/s/ Douglas Harpool*_____
                                  **DOUGLAS HARPOOL**
                                **UNITED STATES DISTRICT JUDGE**